# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN GRAY | * | |
|     Plaintiff | * | |
| v | * | Civil Action No. ELH-11-3549 |
| CIRCUIT COURT FOR BALTIMORE CITY, | * | |
| CHARLES MADDEN, | * | |
| And FRANK CONAWAY | * | |
|     Defendants | * | |

\*\*\*

## **MEMORANDUM**

The above-captioned civil rights case was filed on December 9, 2011, pursuant to 42 U.S.C. § 1983, together with a motion to proceed in forma pauperis ("IFP"). Because plaintiff appears indigent his IFP motion will be granted.

The complaint seems to allege that plaintiff John Gray was denied meaningful access to the courts of the State of Maryland, substantive due process, and equal protection. Gray also claims he was the subject of discriminatory conduct by the defendants, who conspired to violate his civil rights. He seeks a declaratory judgment pronouncing that Maryland Rule 16-404[1] is

---

[1] Maryland Rule 16-404 pertains to the administration of court reporters and provides:

**a. Applicability.** Section b of this Rule applies to court reporters in the circuit courts and the District Court. Sections c, d, and e apply in the circuit courts only.

**b. Establishment of Regulations and Standards.** The Chief Judge of the Court of Appeals shall prescribe regulations and standards regarding court reporters and the system of reporting in the courts of the State. The regulations and standards may include:

    (1) the selection, qualifications, and responsibilities of court reporters;
    (2) procedures and regulations;
    (3) preparation, typing, and format of transcripts;
    (4) charges for transcripts and copies;
    (5) preservation and maintenance of reporting notes and records, however recorded;
    (6) equipment and supplies utilized in reporting; and
    (7) procedures for filing and maintaining administrative records and reports.

unconstitutional. ECF 1 at Attachment Memorandum, pp. 11 – 20.[2] The relief sought by plainitff includes monetary damages and "relief necessary under the all writs act for denial of access to courts such as habeas corpus." *Id*. at p. 20.

In particular, Gray alleges that his rights were violated because he was denied a copy of a transcript of his guilty plea proceeding, which occurred on November 28, 1995; denied a copy of a tape recording of the guilty plea proceeding; denied a copy of his post-conviction transcript; and was not provided with proper notice before the tape recording of the guilty plea was destroyed. He also claims the Clerk of the Circuit Court for Baltimore City did not properly

---

**c. Number of Court Reporters--Supervisory Court Reporter.** Each circuit court shall have the number of court reporters recommended by the County Administrative Judge and approved by the Chief Judge of the Court of Appeals. In a county with more than one court reporter, the County Administrative Judge shall designate one as supervisory court reporter, who shall serve at the pleasure of the County Administrative Judge. The Chief Judge of the Court of Appeals shall prescribe the duties of the supervisory court reporter.

**d. Supervision of Court Reporters.** Subject to the general supervision of the Chief Judge of the Court of Appeals, the County Administrative Judge shall have the supervisory responsibility for the court reporters in that county. The County Administrative Judge may delegate supervisory responsibility to the supervisory court reporter, including the assignment of court reporters.

**e. Methods of Reporting--Proceedings to be Recorded.** Each court reporter assigned to record a proceeding shall record verbatim by shorthand, stenotype, mechanical, or electronic audio recording methods, electronic word or text processing methods, or any combination of these methods, and shall maintain that record subject to regulations and standards prescribed by the Chief Judge of the Court of Appeals, except that a court reporter need not record an audio or audiovisual recording offered or used at a hearing or trial. All proceedings held in open court, including opening statements, closing arguments, and hearings on motions, shall be recorded in their entirety, unless the court and the parties agree otherwise.

[2] Gray filed a document entitled "complaint and jury demand" which includes 27 exhibits filed separately in paper format. The main document is referenced herein as "ECF 1 at Attachment Memorandum," and the exhibits are referenced as "ECF 1 at Attachment __."

transmit the record of his post-conviction case to the Clerk of the Maryland Court of Special Appeals.

The historical account of Gray's attempts to obtain the transcripts and/or tape recordings is complex.[3] Gray's complaints stem from his plea of guilty to first-degree murder, use of a handgun in the commission of a crime, and robbery with a deadly weapon, on November 28, 1995. *See State v. John Gray*, Case Nos. 195059022, -024 (Balt. City Cir. Ct.).[4] Gray is serving a sentence of life imprisonment with two twenty-year concurrent terms of incarceration. *See State v. John Gray*, Case Nos. 195059022, -024 (Balt. City Cir. Ct.). Sometime prior to July 24, 2000, Gray contacted the Office of the Public Defender, Collateral Review Division, for assistance with filing a petition for post-conviction relief[5] based on his allegation that his guilty plea was not voluntarily given. In a two-page letter dated July 24, 2000, an attorney from the Collateral Review Division contacted Gray, advised him that establishing a guilty plea as involuntary required significant proof, and further advised that "your guilty plea transcript does not exist and cannot be created because the court reporter has the notes out of state and has not been in contact with the court for two years." ECF 1 at Attachment 18. The attorney further advised Gray that the public defender would not prepare a post-conviction petition for him, and that he could file a petition on his own. *Id*. In addition, the letter indicated that, even if Gray

---

[3] Although plaintiff includes numerous documents with his complaint, the history is far from complete.

[4] http://casesearch.courts.state.md.us/inquiry/inquiry-index.jsp

[5] Gray's request for the public defender's assistance appears to have been prompted by a letter dated January 10, 2000, from a law clerk for Judge Ellen Heller, denying his request for a copy of a transcript of his guilty plea proceeding at the State's expense. The letter advised that the public defender's office would obtain a transcript. ECF 1 at Attachment 17.

were to establish that his guilty plea was not voluntary, he could be retried and given a longer sentence. *Id*.

On November 15, 2005, Gray filed a post-conviction petition in the Circuit Court for Baltimore City. ECF 1 at Attachment Memorandum, p. 12. A hearing was held by Judge Stewart on August 6, 2006. Gray claims that, prior to the hearing, he tried to obtain a copy of the November 24, 1995 guilty plea transcript, but was told it did not exist. The hearing was held without the benefit of a transcript. On August 28, 2006, Gray's post-conviction counsel, Virginia Pizza, sent him a letter indicating that the tape recording of the guilty plea proceeding had been located in Judge Stewart's chambers. ECF 1 at Attachment 14. Counsel further advised that she was leaving the public defender's office, but that the tape would be reviewed by another member of the public defender's staff and "[i]f we find it necessary to have an additional hearing after we review the tape, one will be requested." *Id*.

Gray states that he contacted the public defender's office several times to obtain a "copy of the guilty plea hearing," but his requests went unanswered. ECF 1 at Attachment 7, 8, and 15. Gray wrote directly to Judge Stewart on December 12, 2006, requesting a copy of the recording of his guilty plea hearing. *Id.* at Attachment 7. He claims in his letter that he had attempted to obtain a copy of the tape from the public defender's office, but his requests had gone unanswered. Further, he stated:

> The clerk of the court sent me a letter in 2005 explaining that when and if the tape of my guilty plea hearing is was [sic] discovered then a transcription service would contact me about making financial arrangements.

*Id*. Gray explains to Judge Stewart that he is concerned that transcription services sometimes leave things out due to human error and for that reason he wanted a copy of the tape, not a transcript. *Id*.

4

On March 2, 2007, Judge Stewart denied Gray's petition for post-conviction relief. *See* ECF 1 at Attachment 2 (Order from the Maryland Court of Special Appeals). A copy of Judge Stewart's decision is not submitted with the documents filed in this Court.

In response to a complaint filed with the Attorney Grievance Commission, the Chief Attorney at the Collateral Review Division of the Public Defender's Office, Scott Whitney, sent a letter to Gray dated May 30, 2007, admitting that their lack of response was improper. *Id*. at Attachment 15. Whitney advised, however, that his office was not obligated to request a second post-conviction hearing on Gray's behalf after counsel reviewed the tape of the guilty plea proceeding. He further state that the public defender's office was never provided with a recording of the guilty plea proceeding and thus could not provide it to Gray. *Id*.

Gray also attempted to obtain a copy of the tape of his guilty plea and a copy of the tape recording of the post-conviction hearing from Charles Madden, the chief court reporter for the Circuit Court for Baltimore City. ECF 1 at Attachment 1, 3, 8, 10, 11, and 12. On March 8, 2007, Gray wrote to Madden, requesting a copy of the post-conviction hearing tape, characterizing his request as an emergency and stating: "I am in disagreement with an account of what the judge reportedly said, was said at this hearing, this is an issue that is <u>vital</u> to my appeal." *Id*. Attachment 12 (emphasis in original). On March 21, 2007, Madden responded to Gray's request, informing him that the audiotape of the post-conviction hearing is the work product of the court reporter and is not available for sale. But, he advised Gray that he could purchase a transcript of the hearing. *Id*. at Attachment 10. In a letter dated March 25, 2007, Gray responded to Madden, stating that he was not trying to buy the tape of the guilty plea proceeding, only a reproduction of the tape. *Id*. at Attachment 11. Gray further stated that he

understood the tape of the August 17, 2006 post-conviction hearing belongs to the court reporter, but did not understand why he could not have a copy of it. *Id*.

In a letter dated December 9, 2008, Madden advised Gray that the court reporter's notes for the August 17, 2006 hearing were located and sent to Accuscribes for transcription.[6] *Id*. at Attachment 1. Madden also stated that "we retain reporters' notes, et cetera, for a period of 12 years, and they are then destroyed. Notes from 1995 are no longer available." *Id*. It is this letter that Gray claims is evidence that the tape of his 1995 guilty plea hearing was destroyed. In a letter to Madden, dated December 12, 2008, Gray informed Madden that the existence of the tape recording from 1995 was verified on August 28, 2006, and that it was in the court's possession. *Id*. at Attachment 3. Gray further noted that Judge Stewart's decision, denying post-conviction relief repeatedly cited portions of the tape recording of the 1995 guilty plea proceeding, and he asked Madden to forward the tape to Accuscribes for transcription. *Id*. However, there is no indication whether the 1995 guilty plea tape recording was ever sent for transcription and, if not, why. On January 10, 2007, Gray again contacted Madden, requesting a copy of the tape recording of the guilty plea proceeding. ECF 1 at Attachment 8. The record does not reflect a response to this request.

Gray maintains that the 1995 recording should not have been destroyed by Madden because it was vital to his pending appeal. He claims his Application for Leave to Appeal Judge Stewart's decision denying him post-conviction relief had been granted at the time he learned the tape recording had been destroyed. He further asserts that this alleged destruction denied him meaningful access to the courts and caused him to be deprived of his liberty because he was unable to prove his claim. ECF 1 at Attachment Memorandum.

---

[6] Included with the documents submitted to this court is an invoice from Accuscribes for transcription of the August 17, 2006 post-conviction hearing. ECF 1 at Attachments 5 and 6.

The history of Gray's appeal as set forth by the Maryland Court of Special Appeals in its Order dated May 29, 2009, indicates that Gray's Application for Leave to Appeal on the merits of the circuit court's post-conviction decision was stricken as untimely by the Circuit Court for Baltimore City. *Id*. at Attachment 2. Specifically, Gray's Application for Leave to Appeal was received for filing on April 4, 2007, after the decision denying relief had been issued on March 2, 2007. On April 9, 2007, the circuit court issued an order to show cause why the application should not be stricken as untimely. On May 1, 2007, when Gray had not responded to the show cause order, the circuit court struck the application for leave to appeal as untimely. The judgment finding the application untimely was entered May 3, 2007. On May 7, 2007, Gray's response to the show cause order was received by the circuit court. Gray also filed a Motion for Reconsideration in the Court of Special Appeals on May 11, 2007, which was remanded to the circuit court on June 4, 2007. The Motion for Reconsideration of the order finding Gray's Application for Leave to Appeal untimely was denied by the circuit court on June 19, 2007.

In the interim, Gray filed a "Motion for Writ of Certiorari" in the Maryland Court of Appeals on May 14, 2007, which was forwarded to the Maryland Court of Special Appeals on May 17, 2007. The Court of Special Appeals construed the Motion for Writ of Certiorari as an Application for Leave to Appeal the circuit court's order denying Gray's motion for reconsideration. The Court of Special Appeals ultimately denied Gray's application for leave to appeal. *See Gray v. State*, Leave to Appeal Docket No. 3126, Sept. Term 2007 (filed Oct. 2, 2009), *cert. denied*, 412 Md. 495, 988 A.2d 1009 (2010).

Gray also claims he has pursued a remedy under Maryland's Public Information Act ("PIA"), Md. Code, State Gov't. Article, § 10-611 *et seq*. The documents he sought under the PIA were the "schedule recommendation and the certificate of disposal" regarding the alleged

7

destruction of the 1995 tape recording of the guilty plea proceeding. ECF 1 at Attachment Memorandum, p. 7, ¶ 25. When he did not receive a response to this request he filed a petition for judicial review. *Id*.; s*ee also In the Matter of the Petition of John Gray-Bey #504151*, Case No. 24C09001860 (Balt. City Cir. Ct.).[7] The electronic docket indicates that the case is closed, but does not reflect that an answer was ever filed or that an order was ever issued by the circuit court. Gray was ordered to pay a $50.00 filing fee in the case and he has provided the receipt indicating that it was paid. ECF 1 at Attachment 19. Notwithstanding the procedural irregularity in that case, the documents requested under the PIA are neither the court records nor the transcripts at issue in Gray's post-conviction proceedings. Indeed, the requested documentation does not appear to be dispositive of Gray's claim that his guilty plea was not voluntarily given. There is no indication in any of the documents provided that the tape recording of Gray's guilty plea was destroyed. It is, therefore, likely that the documents requested do not exist. The only indication Gray provides regarding destruction of records is Madden's statement that there is a general policy to keep court reporter's notes for 12 years. Nothing in that letter indicates the guilty plea recording in Gray's case was actually destroyed.

While the court is sympathetic to Gray's frustration with the process of obtaining records from the Circuit Court for Baltimore City, the complaint filed in this court fails to state a claim upon which relief may be granted. The Circuit Court for Baltimore City is immune from suit and the claims against it must be dismissed. Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Penhurst State School and Hospital v. Halderman*, 465 U. S. 89, 100 (1984). Although the State of Maryland has waived

---

[7] http://casesearch.courts.state.md.us/inquiry/inquiry-index.jsp

its sovereign immunity for certain types of cases brought in State courts, *see* Md. Code, State Gov't Art. § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.

Gray's claim that he has been denied meaningful access to the courts by Madden and Frank Conway, Clerk of the Circuit Court for Baltimore City, must also fail. Gray's Application for Leave to Appeal the post-conviction court's denial of relief was untimely. His inability to obtain appellate review of the merits of his claim had nothing to do with the absence of any particular records in his case. Moreover, Gray admits that the post-conviction court ultimately reviewed the tape of his guilty plea proceeding and referenced the tape numerous times; thus, the post-conviction court's review of his claim was not incomplete, as he initially claimed. Gray's chief complaint is that he was unable to review the tape himself to insure that the circuit court judge did not misstate what occurred during the hearing. This grievance appears to have also been his concern with respect to the post-conviction hearing, as indicated by his letters attempting to obtain a copy of the tape recording of that hearing. Thus, Gray cannot show an "actual injury" resulting from any acts or failures to act by Madden or Conway. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate alleging a violation of *Bounds* [*v. Smith*, 430 U. S. 817 (1977)] must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches.")

Gray seeks a declaratory judgment regarding the constitutionality of Maryland Rule 16-404, a state rule pertaining to court reporters. As a matter of comity, this court ordinarily will not intervene in a matter that the state courts have not had an opportunity to address. *Cf. Granberry v. Greer*, 481 U.S. 129, 134-35 (1987). In any event, there is no basis for the

requested declaratory relief, because the rule does not regulate destruction or preservation of reporting notes and records. Instead, it permits the Chief Judge of the Maryland Court of Appeals to establish regulations as to such matters.

Gray's claims that court officials conspired against him, discriminated against him, and otherwise deprived him of various constitutional rights are also without merit. Gray asserts an equal protection claim without expanding upon how such rights were violated. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U. S. 432, 439 (1985). Gray does not claim others who were in a similar position as his were treated more favorably. Additionally, he claims a violation of his substantive due process rights. To sustain a claim of a violation of substantive due process Gray would have to prove that the conduct alleged was so arbitrary that it shocks the conscience. *See Hawkins v. Freeman*, 195 F. 3d 732, 741 (4th Cir. 1999) (revocation of parole mistakenly granted does not shock the conscience). The failure to provide Gray with the work product of a court reporter does not shock the conscience.

Even assuming the tape recording of Gray's guilty plea proceeding was destroyed, there is no evidence offered that the destruction was the result of a conspiracy or motivated by discriminatory intent. By Gray's own account, if the tape recording was destroyed it was done so pursuant to policy and not in an effort to thwart his attempts to challenge the validity of his conviction or for discriminatory reasons.

In light of the foregoing analysis, the complaint must be dismissed. I will, however, transmit a copy of this Memorandum Opinion to Mr. Madden and Judge Stewart, with a request that, if they do retain a transcript and/or an audio recording of Mr. Gray's guilty plea hearing, they arrange with Mr. Gray to provide him with a copy, as a courtesy to this Court.

A separate Order follows.

Date: January 6, 2012                         /s/
                                     Ellen L. Hollander
                                     United States District Judge